## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 2:12-md-02311-SFC-RSW<br>Honorable Sean F. Cox |
| In Re: Air Conditioning Systems | Case No. 2:13-cv-02705 |
| **THIS RELATES TO:**<br>State Attorneys General | |
| **STATE OF CALIFORNIA,**<br>**ex rel. Rob Bonta,**<br>**Attorney General of the State of California** | Case No. 2:21-cv-11383 |
| **Plaintiffs,**<br>**v.** | **Complaint for Damages, Civil Penalties, and Injunctive Relief**<br>**Demand for Jury Trial** |
| **Sanden Holdings Corporation, Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation and Sanden International (U.S.A.) Inc.** | |
| **Defendants.** | |

The State of California, through Rob Bonta, the Attorney General, in his official capacity as the chief law enforcement officer of the State of California files this complaint against Sanden Holdings Corporation, Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, Defendants or "Sanden"), and alleges:

## NATURE OF ACTION

1.  Defendants and their co-conspirators conspired to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the price of Air Conditioning Systems. These price-fixed parts were installed in automobiles purchased by Plaintiffs.

2.  For the duration of the conspiracy, from as early as August 2008 until at least April 2009, the exact dates being unknown to Plaintiffs, Defendants' actions resulted in fixing, stabilizing, and maintaining prices for Air Conditioning Systems. Due to Defendants' unlawful conduct, the State of California and its state agencies were deprived of open and fair competition when purchasing such parts and paid higher-than-competitive prices for both the parts themselves and for automobiles in which they were installed.

3.  Competition authorities in the United States, the European Union, and Japan have been investigating a number of conspiracies involving automotive parts since at least February 2010. On January 27, 2015, the U. S. Department of Justice ("DOJ") announced that Sanden Corporation agreed to plead guilty to a one count criminal Information and pay a $3.2 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of compressors used in automotive air conditioning systems sold to Nissan North America, Inc. in the United States and elsewhere from at least as early as August 2008 until at least April 2009.

4.  Defendants and their co-conspirators affected millions of dollars of commerce. The State of California, California businesses, and consumers suffered antitrust injury to their business or property due to Defendants' conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and artificially inflate prices for Air Conditioning Systems during the duration of the conspiracy.

## JURISDICTION AND VENUE

5. Plaintiffs bring this action to secure damages, permanent injunctive relief, civil penalties, and reasonable attorneys' fees pursuant to Section 4 (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. §26) for violations of Section 1 of the Sherman Act (15 U.S.C. §1), as well as sections 16720 and 17200 *et seq.* of the California Business and Professions Code.

6. This Court has original jurisdiction over the subject matter of all causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1337.  This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are so related to the federal question claims that they form part of the same case or controversy that would ordinarily be tried in one judicial proceeding.

7. Venue is proper in the United States District Court, Eastern District of Michigan, pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. § 1391. Defendants transact business in the United States, including in this district, committed an illegal act, or are found in this district, and a substantial part of the events giving rise to the claims arose in this district.

## PARTIES

### Plaintiffs

8. The State of California is authorized to file Count I under 15 U.S.C. §§ 15 and 26 to enjoin Defendants from the violations alleged herein.

9. The Attorney General brings this action on behalf of the Plaintiffs the State of California, including California state agencies, for damages, civil penalties, injunctive, and equitable relief.

10. The Attorney General of California is the chief legal officer of the State of California and the enforcement authority of sections 16720 and 17200 *et seq.* of the California Business and Professions Code, and is authorized to file Counts II, III, and IV. As California's chief law enforcement officer, the Attorney General enforces California's antitrust laws, including the Cartwright Act. Cal. Bus. & Prof. Code §§ 16700 - 16770. The Attorney General is specifically authorized to obtain injunctive and other equitable relief, restitution, and civil penalties to redress unfair, unlawful, and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

## Defendants

11. Sanden Holdings Corporation is Japanese corporation with its principal place of business in Isesaki-shi, Japan. Sanden Automotive Components Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. It is a subsidiary of and wholly owned and controlled by its parent, Sanden Holdings Corporation. Sanden Automotive Climate Systems Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. It is also a subsidiary of and wholly owned and controlled by its parent, Sanden Holdings Corporation. Sanden International (U.S.A.) Inc. is a Texas corporation with its principal place of business in Wylie, Texas. It is a subsidiary of and wholly owned and/or controlled by its parent, Sanden Corporation.

## Co-Conspirators and Agents

12. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of whom are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

13. Plaintiffs reserve the right to name some or all of the persons or entities who acted as co-conspirators with Defendants in the alleged offenses as Defendants.

14. Any reference in this Complaint to any act, deed, or transaction by a corporation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

15. Defendants also are liable for acts of companies they acquired through mergers or acquisitions which are done in furtherance of the alleged conspiracy.

16. Defendants named herein acted as the agent or joint venture of or for the other co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

## FACTUAL ALLEGATIONS

17. Defendants engaged in the business of manufacturing and selling Air Conditioning Systems to automobile manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. "Air Conditioning Systems" are systems that cool the interior environment of a vehicle and are part of the thermal segment of the automotive market. Air Conditioning Systems, whether sold together or separately, are defined to include one or more of the following: automotive compressors, condensers, HVAC units

5

(typically consisting of a blower motor, actuators, flaps, evaporator, heater core, and filter embedded in a plastic housing), control panels, sensors, and associated hoses and pipes.

18. Air Conditioning Systems are installed by original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  For new cars, the OEMs—mostly large automotive manufacturers -- purchase Air Conditioning Systems directly from Defendants.  Air Conditioning Systems may also be purchased by component manufacturers who then supply such systems to OEMs.  These component manufacturers are also called "Tier 1 Manufacturers" in the industry.  Tier 1 Manufacturers supply Air Conditioning Systems directly to an OEM.

19. When purchasing Air Conditioning Systems, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts.  Automotive parts suppliers submit quotations, or bids, in response to RFQs, and the OEMs usually award the business to the selected automotive parts suppliers for the lifespan of the car model, usually lasting four to six years.  Typically, the bidding process for a certain car model starts approximately three years before the start of production of a new model.

20. Defendants and their co-conspirators supplied Air Conditioning Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. The Defendants and their co-conspirators manufactured Air Conditioning Systems (a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and/or (c) in Japan and elsewhere

for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

**Structural Characteristics of the Automotive Parts Market**

21. The structural characteristics of the automotive parts market are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. These characteristics include high barriers to entry and inelastic demand.

22. There are substantial barriers to entry in the Air Conditioning Systems market. It would require substantial initial costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long standing relationships with customers. These costs are considered high barriers to entry and preclude or make entry into the market of Air Conditioning Systems more difficult.

23. Due to high barriers to entry, incumbent firms have incentive to collude and keep supra-competitive prices. High barriers to entry also facilitate the maintenance of collusion since incumbents do not face the risk of new entrants engaging in price competition.

24. "Elasticity" is a term used in economics to describe the sensitivity of supply and demand to changes in the price. Demand for a certain product is "inelastic" when an increase in price of the product creates only a small change in the quantity demanded of that product. Consumers of the product whose demand is inelastic would continue to buy it despite a price increase.

25. When customers are not sensitive to a price increase, a cartel can increase price and maintain relatively level sales volume. Thus, it could continue to keep supra-competitive prices with relatively stable demand and increase profit.

**Government Investigations**

26. The United States Department of Justice ("Department of Justice"), as well as authorities in the European Union and Japan, started global, industry-wide investigations into possible violations of the antitrust laws in the auto parts industry in 2010. The complete scope of the investigations is unknown.

27. The Department of Justice publicly announced aspects of the investigation when FBI agents raided the offices and factories of suspected companies. Since the raids, the investigation has continued to this date. So far 46 companies have been convicted and collective fines total more than $2.9 billion.

28. On January 27, 2015, in the US. District Court for the Eastern District of Michigan, Sanden Corp. pleaded guilty to one count for violating Section 1 of the Sherman Act (15 U.S.C. §1) by conspiring to restrain trade by participating in a conspiracy with other entities engaged in the manufacture and sale of Air Conditioning Systems sold to Nissan North America Inc. It also agreed to pay a $3.2 million criminal fine.

29. In furtherance of the conspiracy, Sanden, through its officers and employees, engage in discussions and attended meetings with co-conspirators involved in the manufacture and sale of Air Conditioning Systems. During such discussions and meetings, agreements were reached to rig bids and fix, stabilize, and maintain the prices of Air Conditioning Systems.

**Trade and Commerce**

30. During the period of conspiracy, Defendants and their co-conspirators sold Air Conditioning Systems to automobile manufacturers located in various states in the United States in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, equipment and supplies necessary to the production and

distribution of Air Conditioning Systems sold by Defendants and their co-conspirators, as well as payments for such parts sold by Defendants and its co-conspirators, traveled in interstate and foreign trade and commerce.

31. Plaintiffs purchased a substantial volume of automobiles and trucks. A substantial volume of vehicles containing Air Conditioning Systems manufactured by Defendants and their co-conspirators were sold to California state agencies, California businesses, and California consumers.

32. The anticompetitive act was intentionally directed at the United States market for Air Conditioning Systems because Defendants and their co-conspirators intentionally sold them to an automobile manufacturer that in turn sells automobiles in the United States and in the State of California. The business activities of Defendants and their co-conspirators in connection with the production and sale of Air Conditioning Systems that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

**The Pass-Through of Overcharges to Consumers**

33. Defendants' and their co-conspirators' conspiracy to fix, stabilize, and maintain the prices of Air Conditioning Systems at artificial levels resulted in harm to Plaintiffs because it resulted in Plaintiffs paying higher prices for both the parts themselves and the automobiles installed with them than they would have paid in the absence of Defendants' and their co-conspirators' conspiracy. The entire overcharge at issue was passed onto the State of California.

**Fraudulent Concealment**

34. Throughout the period of conspiracy, Defendants and co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs.

35. Even though Plaintiffs exercised reasonable diligence, they could not discover the violations of law alleged in this Complaint until long after the commencement of their conspiracy.

36. The Department of Justice began an investigation into conspiracies in the auto part industry as early as 2010, but the complete scope of products and companies involved in the conspiracies has not been disclosed to the public yet.

37. Defendants' participation in the conspiracy and their conduct in furtherance of the goals of the conspiracy were not publicly known until the Department of Justice announced the plea agreement with Defendants on or about January 27, 2015.

38. Plaintiffs could not have discovered the violations earlier than that time because Defendants and co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance of the goals of the conspiracy, and fraudulently concealed their activities through various means and methods designed to avoid detection.

39. Defendants and their co-conspirators successfully and affirmatively concealed the nature of their conspiracy and unlawful conduct in furtherance of the conspiracy in at least the following respects:

    a.  By agreeing among themselves to meet at locations where the conspiracy was less likely to be detected;

    b.  By agreeing among themselves to engage in an illegal bid-rigging and price-fixing conspiracy, which is by its nature self-concealing; and

c. By agreeing among themselves to keep the existence of the conspiracy secret, including the usage of secret code names.

40. Plaintiffs had no knowledge of the alleged conspiracy or of any facts or information that might have led to the discovery of the conspiracy in the exercise of reasonable diligence, at least prior to January 27, 2015 when the Department of Justice announced the plea agreement with Defendants.

41. Defendants' and their co-conspirators' effective, affirmative, and fraudulent concealment effectively prevented timely detection by Plaintiffs, and was a substantial factor in causing Plaintiffs' harm.

**Injury**

42. But for Defendants' and their co-conspirators' anticompetitive acts, Plaintiffs would have been able to purchase automobiles that incorporated price-fixed parts at lower prices or at prices that were determined by free and open competition.

43. Defendants' and their co-conspirators' unlawful activities took place within interstate and foreign trade and commerce, and had direct, substantial, and reasonably foreseeable effect on United States and California commerce.

44. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Plaintiffs were not able to purchase Air Conditioning Systems and automobiles installed with those price-fixed parts at prices that were determined by free and open competition. Consequently, Plaintiffs have been injured because they paid more than they would have paid in a free and open competitive market. There is a domestic injury that is concrete, quantifiable, and directly traceable back to the Defendants' and their co-conspirators' anticompetitive conduct.

11

45. As Plaintiffs paid more than what they would have paid absent the conspiracy, Defendants' and their co-conspirators' conduct has resulted in deadweight loss to the economy of the State of California, including reduced output, higher prices, and reduction in consumer welfare.

46. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Defendants and their co-conspirators benefitted unjustly from the supra-competitive and artificially inflated prices.  The unjust financial profits on the sale of price-fixed Air Conditioning Systems resulted from their illegal and anticompetitive conduct.

## VIOLATIONS ALLEGED

### Count I

### (Violation of Section 1 of the Sherman Act)

47. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

48. Defendants and their co-conspirators engaged in a conspiracy which unreasonably restrained the trade or commerce among the several States and with foreign nations; thus, their conduct violates Section 1 of the Sherman Act (15 U.S.C. §1).  The State of California is entitled to relief resulting from the Defendants' conduct.

49. Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy to raise, fix, maintain, and stabilize the prices charged for Air Conditioning Systems during the period of conspiracy.

50. Their unlawful conduct in furtherance of the conspiracy was intentionally directed at the United States market for Air Conditioning Systems and had a substantial and foreseeable

effect on interstate commerce by raising and fixing prices of the parts in the United States.

51. The State of California has been injured by being forced to pay artificially inflated prices for Air Conditioning Systems and automobiles installed with Air Conditioning Systems than they would have paid in the absence of the conspiracy.

52. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed and will continue to be damaged by being forced to pay supra-competitive prices that they would not have paid in the absence of the Defendants' conduct.

53. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

54. Unless permanently restrained and enjoined, Defendants will continue to unreasonably restrain fair and open competition for Air Conditioning Systems.  Plaintiffs are entitled to an injunction against Defendants to prevent and restrain the violations alleged herein.

## Count II

## (Violation of the Cartwright Act, Business & Professions Code Section 16720)

55. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

56. Beginning in at least as early as August 2008 continuing until at least April 2009, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust for the purpose of unreasonably

restraining trade in violation of section 16720 of the California Business and Professional Code.

57. Defendants and their co-conspirators violated section 16720 of the California Business and Professional Code by forming a continuing unlawful trust and arranging a concerted action among Defendants and their co-conspirators in order to fix, raise, maintain and stabilize the prices of Air Conditioning Systems.

58. In furtherance of the goals of the conspiracy, Defendants and their co-conspirators conspired to:

   a. fix, raise, maintain, and stabilize the price of Air Conditioning Systems;

   b. submit rigged bids for the award of certain Air Conditioning Systems contracts for automobile manufacturers; and

   c. allocate markets for Air Conditioning Systems amongst themselves.

59. The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

   a. price competition in the sale of Air Conditioning Systems has been restrained, suppressed, and/or eliminated in the State of California;

   b. prices for Air Conditioning Systems sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high and non-competitive levels in the State of California; and

   c. Plaintiffs who purchased automobiles installed with price-fixed Air Conditioning Systems have been deprived of the benefit of free and open competition.

60. As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs were injured in their business and property because they paid more for Air Conditioning Systems and automobiles installed with price-fixed parts than they

would have paid in the absence of Defendants' and their co-conspirators' unlawful

conduct. As a result of Defendants' and their co-conspirators' violation of section 16720

of the California Business and Professions Code, Plaintiffs bring this claim pursuant to

section 16750(c) and seek treble damages and the costs of suit, including reasonable

attorneys' fees, pursuant to section 16750(a) of the California Business and Professions

Code. The California Attorney General is entitled to fines and civil penalties to the

maximum extent permitted by law under section 16755 of the California Business and

Professions Code. The California Attorney General may also obtain injunctive relief

under section 16754.5 of the California Business and Professions Code.

### Count III

**(Violation of the Unfair Competition Law, Business and Professions Code Section 17200)**

61. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every

    allegation set forth in the preceding paragraphs of this Complaint with the same meaning,

    force, and effect.

62. Beginning in at least as early as August 2008 and continuing until at least April 2009, the

    exact dates being unknown to Plaintiffs, Defendants and their co-conspirators committed

    acts of unfair competition, as defined by section 17200, *et seq.*, of the California Business

    and Professions Code.

63. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants and

    their co-conspirators, as alleged herein, constituted a common continuing conduct of

    unfair competition including unfair, unlawful and fraudulent business practices within the

meaning of section 17200, *et seq.*, of the California Business and Professions Code, including, but not limited to, the following:

    a.  The violations of section 16720, *et seq.*, of the California Business and Professions Code, set forth above, constitute unlawful acts within the meaning of section 17200 of the California Business and Professions Code;

    b.  Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

    c.  Defendants' acts and practices are unfair to consumers of Air Conditioning Systems and of automobiles installed with such price-fixed parts in the State of California, within the meaning of section 17200 of the California Business and Professions Code;

    d.  Defendants' acts and practices are fraudulent or deceptive within the meaning of section 17200 of the California Business and Professions Code; and

    e.  Defendants' actions to solicit others to join the conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and/or artificially inflate prices for Air Conditioning Systems, whether successful or not, are unfair business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code.

64. The unlawful and unfair business practices of Defendants and their co-conspirators caused Plaintiffs to pay supra-competitive and artificially inflated prices for Air Conditioning Systems and automobiles in which they were installed. Plaintiffs were

injured in their business and property because they paid more than they would have paid in the absence of Defendants' and their co-conspirators' unlawful conduct.

65. The California Attorney General is entitled to recover civil penalties for the violations alleged in this Complaint not to exceed $2,500 for each violation of section 17206 of the California Business and Professions.

## Count IV

## Unjust Enrichment

66. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

67. Plaintiffs were deprived of economic benefit because Defendants' and their co-conspirators' anticompetitive conduct created supra-competitive and artificially inflated prices for Air Conditioning Systems.

68. Defendants and their co-conspirators enjoyed unjust financial profits which were derived from unlawful overcharges and monopoly profits.  Their financial profits are economically traceable to overpayments for Air Conditioning Systems by Plaintiffs.

69. The supra-competitive and artificially inflated price for Air Conditioning Systems, and unlawful monopoly profits enjoyed by Defendants and their co-conspirators are a direct and proximate result of Defendants' and their co-conspirators' unlawful practices.

70. It would lead to injustice if Defendants and their co-conspirators could retain any of the unlawful financial profits that are a direct and proximate result of their engagement in unlawful, unfair, and fraudulent conduct.

71. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' and their co-conspirators' unfair competition.  Plaintiffs are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants' and their co-conspirators' engagement in unlawful, unfair, and fraudulent conduct.

72. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their unlawful and anticompetitive conduct.  Under sections 17203 and 17204 of the California Business and Professions Code, Plaintiffs are accordingly entitled to an injunction against Defendants in order to restrain the violations alleged herein and to equitable relief which includes restitution money or property which may have been acquired by means of Defendants' and their co-conspirators' unfair and anticompetitive conduct. Plaintiffs are also entitled to civil penalties to the maximum extent permitted by law pursuant to section 17206, *et seq.*, of the California Business and Professions Code.

**Prayer for Relief**

73. Accordingly, Plaintiffs request that this Court:

   a.  Adjudge and decree that Defendants violated the Sherman Act (15 U.S.C. §1);

   b.  Adjudge and decree that Defendants' contract, conspiracy, or combination constitutes an illegal and unreasonable restraint of trade in violation of the Cartwright Act, section 16720, *et seq.*, of the California Business and Professions Code;

c. Adjudge and decree that Defendants' contract, conspiracy, or combination violates the Unfair Competition Law, section 17200, *et seq.*, of the California Business and Professions Code;

d. Award to Plaintiffs to the maximum amount permitted under the relevant federal antitrust law;

e. Award to Plaintiffs damages, trebled, in an amount according to proof pursuant to section 16750, *et seq.*, of the California Business and Professions Code;

f. Award to Plaintiffs the deadweight loss (i.e. the general damage to the economy of the State of California) resulting from Defendants' illegal activities;

g. Award to Plaintiffs restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment, or any acts in violation of federal and state antitrust or consumer protection statutes and laws, including section 17200, *et seq.*, of the California Business and Professions Code;

h. Award to Plaintiffs pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

i. Award Plaintiffs the maximum civil penalties under section 17206 of the California Business and Professions Code for each violation of Defendants' anticompetitive conduct as set forth in this Complaint;

j. Award Plaintiffs the maximum fines and civil penalties under section 16755 of the California Business and Professions Code for each violation of California Business and Professions Code section 16720, *et seq.* as set forth in this Complaint;

k.  Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates, assignees, subsidiaries, successors, and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct and from adopting in the future any practice, plan, program, or device having a similar purpose or effect to the anticompetitive actions set forth above;

l.  Award to Plaintiffs their costs, including reasonable attorneys' fees; and

m.  Order other legal and equitable relief as it may deem just and proper, including such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation in order to dissipate the anticompetitive effects of Defendants' violations, and to restore competition.

### Jury Trial Demanded

74. Plaintiffs demand trial by jury for all causes of action, claims, or issues in this action which are triable as a matter of right to a jury.

Dated:  June 11, 2021

ROB BONTA
Attorney General of California


/s/  Anik Banerjee
KATHLEEN E. FOOTE
Senior Assistant Attorney General
ANIK BANERJEE
CA State Bar No. 236960
WINSTON H. CHEN
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6058
 Anik.Banerjee@doj.ca.gov
*Attorneys for Plaintiffs*